GEER, Judge.
*603 Respondent appeals from an order terminating his parental rights to J.A.U. Because petitioner, J.A.U.'s maternal grandmother, lacked standing to file a petition to terminate respondent's parental rights, we vacate the trial court's order.
Facts
J.A.U. ("Jeffrey") was born in New York State in 2006 and moved to North Carolina with his mother, "Kayla," when he was six weeks old.[1] Jeffrey and Kayla lived with petitioner when they first moved to North Carolina. In 2007 or 2008, Kayla took Jeffrey to Virginia, where she attended school. Beginning in around 2009, Kayla and Jeffrey lived with *604 the father of Kayla's second child for about two years. However, Jeffrey had frequent visits with petitioner during the first six years of his life, and petitioner provided financial support for Kayla and Jeffrey.
Kayla had ongoing problems with substance abuse and, on 8 October 2012, she voluntarily placed Jeffrey with a family friend and entered a detox facility. On 6 November 2012, the Wilkes County Department of Social Services ("DSS") obtained nonsecure custody of Jeffrey and placed him in the Ebenezer Gardens Christian Children's Home, a group home. DSS filed a petition on 6 November 2012 alleging that Jeffrey was a dependent juvenile and filed an amended petition on 8 November 2012 alleging that Jeffrey was a neglected and dependent juvenile. The amended petition reiterated the allegations from the first petition and added that Kayla had recently named respondent, who was incarcerated, as Jeffrey's father.
*773 On 17 December 2012, Judge David V. Byrd entered an order adjudicating Jeffrey a neglected and dependent juvenile, continuing Jeffrey's custody with DSS, denying respondent the right to visitation with Jeffrey during his incarceration, and allowing Kayla visitation, subject to certain conditions. On 15 March 2013, Judge Michael D. Duncan entered a review order finding that respondent remained incarcerated and that Kayla had done little towards completing the items on the plan developed by DSS. The review order also found that petitioner was interested in having Jeffrey placed in her home, but that she was physically unable to care for him, given that she was recovering from back surgery. The order continued Jeffrey's legal and physical custody with DSS and gave DSS authority to place Jeffrey with petitioner if it became appropriate.
On 21 May 2013, Jeffrey was placed with petitioner, but remained in the legal and physical custody of DSS. Judge Duncan entered a permanency planning order on 28 June 2013, stating that the court had "seriously considered" a permanent plan of placement with petitioner, but had decided to allow Jeffrey's parents an additional 90 days to demonstrate compliance with the DSS case plan. On 10 October 2013, Judge Duncan entered a new permanency planning order granting legal and physical custody of Jeffrey to petitioner. On 24 March 2014, Judge Jeanie R. Houston entered a permanency planning order that continued Jeffrey's custody with petitioner, relieved DSS of further responsibility, and converted the matter to a civil custody action pursuant to the provisions of Chapter 50 of the North Carolina General Statutes.
On 6 May 2014, petitioner filed a petition to terminate respondent's parental rights to Jeffrey pursuant to *605 N.C. Gen.Stat. § 7B-1111(a)(7) (2013) (willful abandonment) and N.C. Gen.Stat. § 7B-1111(a)(3) (willful failure to pay a reasonable portion of the cost of care for the juvenile). Following a hearing conducted on 2 October 2014, the trial court entered an order terminating respondent's parental rights on 28 October 2014. Respondent timely appealed to this Court.
Discussion
Respondent first argues the trial court lacked jurisdiction over the termination of parental rights proceeding because petitioner did not have standing to file a petition to terminate his parental rights to Jeffrey. We agree and find this issue dispositive of respondent's appeal.
"In North Carolina, standing is jurisdictional in nature and consequently, standing is a threshold issue that must be addressed, and found to exist, before the merits of [the] case are judicially resolved." In re E.T.S., 175 N.C.App. 32, 35, 623 S.E.2d 300, 302 (2005) (internal quotation marks omitted). Standing to initiate a termination of parental rights action is governed by N.C. Gen.Stat. § 7B-1103(a) (2013), which provides:
A petition or motion to terminate the parental rights of either or both parents to his, her, or their minor juvenile may only be filed by one or more of the following:
(1) Either parent seeking termination of the right of the other parent.
(2) Any person who has been judicially appointed as the guardian of the person of the juvenile.
(3) Any county department of social services, consolidated county human services agency, or licensed child-placing agency to whom custody of the juvenile has been given by a court of competent jurisdiction.
(4) Any county department of social services, consolidated county human services agency, or licensed child-placing agency to which the juvenile has been surrendered for adoption by one of the parents or by the guardian of the person of the juvenile, pursuant to G.S. 48-3-701.
(5) Any person with whom the juvenile has resided for a continuous period of two years or more next preceding the filing of the petition or motion.
*606 (6) Any guardian ad litem appointed to represent the minor juvenile pursuant to G.S. 7B-601 who has not been relieved of this responsibility.
*774 (7) Any person who has filed a petition for adoption pursuant to Chapter 48 of the General Statutes.
In this case, petitioner is not a parent of Jeffrey, a county department of social services, or a guardian ad litem, and she had not filed a petition to adopt Jeffrey at the time she filed a petition to terminate respondent's parental rights. Therefore, the only possible bases for petitioner's standing arise under subsections (a)(2), as a "person who has been judicially appointed as the guardian of the person of the juvenile[,]" or (a)(5), as a "person with whom the juvenile has resided for a continuous period of two years or more next preceding the filing of the petition or motion."
As regards N.C. Gen.Stat. § 7B-1103(a)(2), it is undisputed that at the time petitioner filed a petition seeking termination of respondent's parental rights, she had not been "judicially appointed as [Jeffrey's] guardian." The record indicates that the trial court awarded only legal and physical custody of Jeffrey to petitioner, and the termination order specifically finds that "[t]here is no person appointed as guardian of the person of the minor child [.]" Therefore, petitioner did not have standing to seek termination of respondent's parental rights under that subsection.
Petitioner, however, argues that she had standing under N.C. Gen.Stat. § 7B-1103(a)(2) because her status as Jeffrey's custodian was equivalent to that of a legal guardian. We addressed this argument in In re B.O., 199 N.C.App. 600, 681 S.E.2d 854 (2009). In In re B.O., the petitioners contended that their status as custodians granted them the same status as guardians and established their standing to file a termination of parental rights petition. Id. at 603, 681 S.E.2d at 857. We rejected that argument, noting that our Juvenile Code recognizes a distinction between "custodian" and "guardian" and that:
[u]nder the [Juvenile] Code, "guardians" clearly have far greater powers over their wards than do "custodians." These terms are not synonymous under the statute, and N.C. Gen.Stat. § 7B-1103 includes no provision granting "custodians" standing to petition for termination of another's parental rights.
Id. at 604, 681 S.E.2d at 857. Therefore, "[w]e [could not] hold that the words 'custody' and 'judicially appointed ... guardian' as used in *607 N.C. Gen.Stat. § 7B-1103 were not intended to have specific, distinct meanings." Id. at 603, 681 S.E.2d at 857.
Petitioner acknowledges the holding of In re B.O. but urges us to disregard it, based on the fact that the statutory definition of "custodian" has changed since our decision in that case. When In re B.O. was decided, N.C. Gen.Stat. § 7B-101(8) (2009) defined custodian as "[t]he person or agency that has been awarded legal custody of a juvenile by a court or a person, other than parents or legal guardian, who has assumed the status and obligation of a parent without being awarded the legal custody of a juvenile by a court." The legislature amended the statute effective 1 October 2013, and "custodian" is now defined as the "person or agency that has been awarded legal custody of a juvenile by a court." N.C. Gen.Stat. § 7B-101(8) (2013). The effect of this change was to eliminate the extra-judicial definition of a custodian.
Petitioner appears to contend that the legal status of a custodian is now the same as a guardian, because both may only be appointed by a court. Although custodians and guardians are both designated by a court, petitioner cites no authority for the proposition that the two are now identical, or that In re B.O. was overruled by the definitional change, and we have found no indication that the legislature intended to conflate the two terms. Moreover, in both the present case and In re B.O., the petitioner was a court-appointed custodian. We therefore have no reason to revisit our holding in In re B.O., and we hold that petitioner did not have standing as a judicially-appointed guardian to file a termination of parental rights petition.
We also conclude that petitioner did not have standing to file for termination of respondent's parental rights pursuant to N.C. Gen.Stat. § 7B-1103(a)(5) because she was not a "person with whom the juvenile has resided for a continuous period of two years or more next preceding the filing of the *775 petition or motion." Petitioner filed a petition for termination of respondent's parental rights on 6 May 2014. Therefore the relevant time period was 6 May 2012 to 6 May 2014.
The record shows that (1) Jeffrey lived with Kayla from November 2011 until DSS became involved with the family on 8 October 2012; (2) DSS placed Jeffrey in a group home in November 2012; and (3) DSS did not place Jeffrey with petitioner until 21 May 2013. When petitioner filed the petition for termination of respondent's parental rights on 6 May 2014, Jeffrey had been living with her for slightly less than a year. By the plain language of the statute, petitioner is not a person "with *608 whom the juvenile has resided for a continuous period of two years or more next preceding the filing of the petition or motion." Id.
Petitioner contends that her standing is established in the trial court's Finding of Fact No. 10, which found that Jeffrey "has resided with Petitioner all of the child's life with the exception of a few days when the child resided with his biological mother." Respondent challenges Finding of Fact No. 10 as unsupported by clear, cogent, and convincing evidence, and we agree. Jeffrey may have lived with petitioner at various points in his life. However, the evidence is undisputed that he did not live with petitioner for "all of the child's life with the exception of a few days[.]" For example, petitioner testified that Kayla and Jeffrey lived in Virginia during 2007 or 2008, and that they lived with the father of Kayla's other child for about two years, starting when Jeffrey was age three. The record shows he also lived with Kayla between November 2011 and October 2012 and that he was in a group home from November 2012 until 21 May 2013. We conclude that this finding of fact is unsupported by the evidence, which establishes that Jeffrey had lived apart from petitioner for periods significantly longer than "a few days" and had lived with petitioner continuously for less than one year at the time she filed a termination petition. Accordingly, we hold that petitioner did not have standing to file a termination of parental rights petition under N.C. Gen.Stat. § 7B-1103(a)(5).
In urging us to reach a contrary conclusion, petitioner contends that there is evidence that Jeffrey had lived with petitioner for "the majority of his life." However, petitioner does not argue that Jeffrey had lived with petitioner continuously for at least two years prior to the filing of the petition, which is the statutory standard. Petitioner also cites language in In re E.T.S., describing the two-year requirement set out in N.C. Gen.Stat. § 7B-1103(a)(5) as being "based upon the relationship between the petitioner and the child." In re E.T.S., 175 N.C.App. at 38, 623 S.E.2d at 303. However, in In re E.T.S., the minor had lived with the petitioner for more than two years. The quoted language, which is arguably dicta, does not hold that a long-term relationship is a valid substitute for the requirement of N.C. Gen.Stat. § 7B-1103(a)(5).
Petitioner also cites In re A.D.N., --- N.C.App. ----, 752 S.E.2d 201 (2013), disc. review denied, 367 N.C. 321, 755 S.E.2d 626 (2014), in which we held that where the juvenile had lived with the petitioner for more than two years, the petitioner's standing to file a petition for termination of parental rights was not defeated by the fact that during the two-year period the child had visited the respondent parents for a few days on a *609 number of occasions. In re A.D.N. is factually distinguishable from the present case, in which Jeffrey had not lived with petitioner for at least two years prior to the filing of the termination petition.
In conclusion, petitioner does not fall within any of the categories enumerated in N.C. Gen.Stat. § 7B-1103(a), and she therefore lacked standing to file a petition to terminate respondent's parental rights. Because she lacked standing, the trial court did not have subject matter jurisdiction over the termination proceedings. Accordingly, we must vacate the trial court's order terminating respondent's parental rights. Because we are vacating the trial court's order, we need not address respondent's remaining arguments on appeal.
VACATED.
Judges STROUD and TYSON concur.

The pseudonyms "Jeffrey" and "Kayla" have been used throughout the opinion to protect the child's privacy and for ease of reading.